**E-FILED on** 11/30/07

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| HOUSTON CASUALTY COMPANY,<br><br>    Plaintiff,<br><br>v.<br><br>INTERNATIONAL GRAND TOURS, INC.; NORMAN RONNIE HANSEN a/k/a NORMAN RONNIE HANSEN, JR. a/k/a RON HANSEN; and DOES 1 to 10,<br><br>    Defendants,<br><br>EDWARDSVILLE [Ill] COMMUNITY SCHOOL DISTRICT NO. 7, on Its Own Behalf and as Assignee for Katie Bachman, et al.,<br><br>    Intervenors. | No. C-07-01188 RMW<br><br>ORDER GRANTING MOTION TO INTERVENE; DENYING MOTION FOR DEFAULT JUDGMENT<br><br><br><br>**[Re Docket No. 26, 27]** |

    Shortly before plaintiff Houston Casualty Company ("HCC") moved for default judgment against defendants International Grand Tours, Inc. ("IGT") and its principal, Norman Ronnie Hansen ("Hansen"), the Edwardsville Community School District No. 7 ("School District") and thirty-three individuals from the Edwardsville High School Spanish Club ("Spanish Club") filed a motion to intervene (collectively referred to as "Applicants"). The court considers these two motions together.

ORDER GRANTING MOTION TO INTERVENE; DENYING MOTION FOR DEFAULT JUDGMENT —No. C-07-01188 RMW

CYY/MAG

For the reasons set forth below, the court grants Applicants' motion to intervene and denies HCC's motion for default judgment.

## I. BACKGROUND

Defendant IGT is an educational travel agency in the business of selling group educational tours through Mexico, Europe and other destinations worldwide. Compl. for Decl. Judgment by HCC ("HCC Compl.") ¶ 6. IGT started its business around July 2004 and ceased operating in June 2005. *Id.* ¶ 7. In 2004, defendant Hansen negotiated to purchase the assets of JM Travel Selections, Inc. ("JM Travel"), a company owned by Joseph and Sharon Maloof ("Maloofs"). *Id.* ¶ 9. The result of the negotiation was a verbal purchase agreement between the Maloofs and Hansen. As part of the agreement, the Maloofs were to sell their entire customer database and other intellectual property to IGT, and IGT would employ the Maloofs as its directors of operations and sales. *Id.* ¶ 10. According to HCC, the sale was never completed. *Id.* Beginning in 2005, IGT began canceling pre-paid trips. *Id.* ¶ 11. It provided written notice of the cancellation and provided the participants with various options including: (1) joining another tour group; (2) rescheduling the tour for a different time; or (3) refunding all amounts paid. Many of the participants, including the Spanish Club, chose the third option and demanded that IGT forward the funds as soon as possible. *Id.* However, IGT failed to issue refunds as requested, so many of the participants filed suit against defendants, or made claim directly against HCC as IGT's insurer.[1] *Id.* ¶ 12.

HCC issued IGT a Professional Liability Errors & Omissions Insurance Policy, Policy No. H704-16117 ("Policy"), with limits of liability of $5,000,000 per claim. The Policy provides coverage for "any Claim first made against the insured" between October 19, 2004 and October 19, 2005, subject to a Retroactive Date of October 19, 2003 ("Policy Period"). *Id.* ¶¶ 25-26.

Prior to the issuance of the Policy, defendants executed and submitted an application for insurance dated August 23, 2004 ("Application"), which contains the following certification statement:

---

[1] HCC's complaint notes that at least five suits have been filed against Hansen and IGT and that numerous claims against defendants have been submitted directly to HCC. HCC Compl. ¶¶ 15-24.

> I HEREBY DECLARE that, after inquiry, the above statements and particulars are true and that I have not suppressed or misstated any, material fact and that I agree that this application shall be the basis of the contract with the Underwriters.

*Id.* ¶ 37. In response to Question 10 of the Application "Is the Application Firm controlled, owned or associated with any other firm, corporation or company?" Defendants answered "Yes" and stated that IGT's previous name was "Travel Selections, Inc." *Id.* ¶ 35. Defendants also stated in the Application that similar insurance was currently in force by HCC with an expiration date of October 19, 2004 with an October 19, 2003 retroactive date. *Id.* ¶ 36. HCC contends that it issued the Policy based upon this information, but subsequently discovered that IGT had not previously operated under the name "Travel Selections, Inc.," and that IGT was not incorporated until August 2004. *Id.* ¶ 39. HCC asserts that had it known this information it would not have issued the Policy, or at least increased premiums or excluded claims such as the ones that have been asserted against it by participants in IGT's cancelled tours. On August 18, 2005, defendants were notified that the Policy was cancelled effective August 18, 2005. *Id.* ¶ 34.

On February 28, 2007, HCC filed a complaint for declaratory relief on various grounds, seeking rescission of the Policy due to fraud, misrepresentation and concealment of material facts and an injunction preventing IGT and Hansen from prosecuting any proceeding against HCC regarding the policy. *See id.* ¶¶ 52-58. On July 31 and August 28, 2007, HCC obtained a clerk's entry of default against all defendants. Mot. for Default Judgment, Exs. A-C. Since defendants never answered or otherwise responded to HCC's complaint, on October 9, 2007, HCC filed a motion for default judgment pursuant to Fed. R. Civ. P. 54(c) for all the relief requested in HCC's complaint for declaratory judgment, including an award of costs. Mot. for Default Judgment at 5.

On September 25, 2007, prior to HCC filing its motion for default judgment, the School District, one of the groups that has submitted a claim to HCC, moved to intervene, submitting a complaint in intervention for declaratory relief ("School Dist. Compl.") against HCC. The School District alleges that groups from the School District had traveled with JM Travel on a number of occasions. Ms. Thompson, a Spanish teacher for the School District, had conducted regular business with the Maloofs throughout the years. The School Dist. Comp. ¶ 14. Sometime in 2003, Thompson received a brochure from the Maloofs regarding a trip to three South American

1 destinations. *Id.* ¶¶ 15-16. Based on the Maloofs' representations, Thompson showed her interest
2 and started to organize the trip for the members of the Spanish Club. *Id.* ¶¶ 17-18. Around March
3 2004, Thompson sent JM Travel an initial deposit of $300 per person, plus $95 per person for
4 registration and materials fee that she collected from the interested students. *Id.* ¶¶ 19-20. In
5 September 2004, Thompson received an undated letter from Joseph Maloof stating that he had
6 decided to cease JM Travel's operation, and he wanted to introduce the Spanish Club to IGT. The
7 Maloofs promised the Spanish Club that their contractual arrangements with JM Travel would
8 continue with IGT, and that IGT would be a more efficient and better operation. *Id.* ¶ 21. Later,
9 IGT sent a letter to the Spanish Club, stating that most of JM Travel's staff had joined IGT, and IGT
10 made the same promises as the Maloofs had made. *Id.* ¶ 22. Thereafter, the Spanish Club members
11 completed new applications and forwarded further payments to IGT as instructed. *Id.* ¶¶ 23-25.

12 Beginning in December 2004, the Spanish Club began having surcharge problems with IGT.
13 *Id.* ¶ 29. On May 19, 2005, Hansen notified Thompson that the Spanish Club's trip was canceled,
14 and informed the Spanish Club members that they could elect one of the three alternatives stated
15 above. *Id.* ¶¶ 32-36. All members requested a refund, however, IGT has not issued any refunds to
16 Spanish Club members. *Id.* ¶¶ 37-38.

17 On September 12, 2006, the School District filed an action in the Superior Court of Santa
18 Clara County, Case No. 106-CV-070951, against IGT and Hansen, seeking recovery based on
19 negligence, breach of statutory duty and negligent misrepresentation ("State Action"). *Id.* ¶ 40.
20 Hansen defaulted in the State Action. *Id.* ¶ 45. Because Applicants believe that their losses are
21 insured under the Policy, they move to intervene as of right pursuant to Fed. R. Civ. P. 24(a)(2),
22 seeking declaratory judgment that their recovery in the State Action are losses covered by the
23 Policy. *Id.* at 10; Mot. for Intervention at 3.

## II. ANALYSIS

25 Applicants assert that they are entitled to intervene of right under Rule 24(a)(2) because their
26 claims for general damages and emotional distress resulting from defendants' negligent
27 misrepresentations are covered by the Policy that HCC seeks to rescind by its declaratory relief
28 action. In the alternative, they seek permissive intervention under Rule 24(b), on the grounds that

ORDER GRANTING MOTION TO INTERVENE; DENYING MOTION FOR DEFAULT JUDGMENT —No. C-07-01188 RMW
CYY/MAG                                4

the Applicants' claims and the coverage in dispute share common issues of law and fact. Applicants also oppose HCC's motion for default judgment.

**A. Motion for Intervention**

Rule 24(a)(2) permits intervention as of right:

> [u]pon timely application . . . (2) when the applicant claims an interest relating to the property or transaction which is the subject of the action and the applicant is so situated that the disposition of the action may as a practical matter impair or impede the applicant's ability to protect that interest, unless the applicant's interest is adequately represented by existing parties.

Fed. R. Civ. P. 24(a)(2). The Ninth Circuit has set forth four requirements that must be met by a party to support intervention as of right:

> (1) the applicant must timely move to intervene; (2) the applicant must have a significantly protectable interest relating to the property or transaction that is the subject of the action; (3) the applicant must be situated such that the disposition of the action may impair or impede the party's ability to protect that interest; and (4) the applicant's interest must not be adequately represented by existing parties.

*Arakaki v. Cayetano,* 324 F.3d 1078, 1083 (9th Cir. 2003).

A proposed intervenor "bears the burden of showing that all the requirements for intervention have been met." *United States v. Alisal Water Corp.,* 370 F.3d 915, 919 (9th Cir. 2004). Courts traditionally interpret Rule 24 liberally in favor of applicants for intervention. *Donnelly v. Glickman,* 159 F.3d 405, 409 (9th Cir. 1998). In considering a motion to intervene, the district court must accept as true nonconclusory allegations of the motion and proposed complaint in intervention "absent sham, frivolity or other objections." *Southwest Center for Biological Diversity v. Berg,* 268 F.3d 810, 819 (9th Cir. 2001).

**1. Timeliness**

The determination of timeliness is left to the district court's discretion. *Dilks v. Aloha Airlines,* 642 F.2d 1155, 1156 (9th Cir. 1981). Courts weigh three factors in determining whether a motion to intervene is timely: (1) the stage of the proceeding at which an applicant seeks to intervene; (2) the prejudice to other parties; and (3) the reason for the length of the delay. *Alisal Water Corp.,* 370 F.3d at 921. In considering these factors, "any substantial lapse of time weighs heavily against intervention." *League of United Latin American Citizens v. Wilson,* 131 F.3d 1297, 1302 (9th Cir. 1997).

ORDER GRANTING MOTION TO INTERVENE; DENYING MOTION FOR DEFAULT JUDGMENT —No. C-07-01188 RMW
CYY/MAG          5

The School District filed the State Action in September 2006. HCC filed the instant action in February 2007. In April and May 2007, counsel for HCC and counsel for the School District discussed the underlying State Action as well as the instant declaratory relief action by HCC. During one of those conversations, counsel for the School District advised HCC that he would file a motion to intervene in the instant action. HCC Opp'n at 3. However, Applicants did not file a motion to intervene until September 25, 2007. Applicants provide no explanation for the delay in seeking to intervene.

Although delay can strongly weigh against intervention, the mere lapse of time, without more, is not necessarily a bar to intervention. *United States v. Oregon,* 745 F.2d 550, 552 (9th Cir. 1984). Here, HCC claims that it is more than a lapse of time that causes Applicants' motion to intervene to be untimely. According to HCC, the proceedings are now significantly advanced: it has obtained default against all defendants and now seeks default judgment that it is entitled to rescind the Policy. Accordingly, HCC contends that it will be prejudiced if intervention is granted.

Because entry of default judgment is at the court's discretion, HCC is not automatically entitled to default judgment simply because it has obtained default against IGT and Hansen. And because the court has not entered default judgment, Applicants' motion to intervene does not implicate the concerns of granting intervention following the entry of judgment. *See Calvert v. Huckins,* 109 F.3d 636, 638 (9th Cir. 1997) (post-judgment intervention generally disfavored because it creates "delay and prejudice to existing parties"). The court finds that aside from requiring HCC to prove its case on the merits, any delay will not result in prejudice to HCC. The case has only been pending since February 2007 – a relatively short amount of time and, aside from entry of default, no action has been taken. The court acknowledges that denying the entry of default judgment may permit those who have claims against IGT to come forward, however requiring HCC to at least prove up the allegations in its complaint in order to obtain a judgment in this matter does not result in prejudice to HCC. Here, the court finds that although there appears to have been an unexplained delay between the parties' discussion about intervention and the School District's motion to do so, the motion for intervention is nevertheless timely because the delay has not resulted in prejudice to HCC.

**2.     Protectable Interest**

The requirement of a significant protectable interest is generally satisfied when the interest is protectable under some law, and that there is a relationship between the legally protected interest and the claims at issue. *Arakaki,* 324 F.3d at 1084. An applicant generally satisfies the "relationship" requirement only if the resolution of the plaintiff's claims actually will affect the applicant. *Id.*

Here, Applicants assert that their losses are of the type insured by the Policy. Applicants further contend that because all defendants in the State Action have entered bankruptcy, their only realistic possibility of recovery for the cancelled trip will likely be under the Policy. Mot. for Intervention ¶¶ 9-10.

HCC nevertheless contends that Applicants' interest is not a protectable one because they are not parties to the Policy. HCC asserts that "absent an assignment of rights or a final judgment, a third-party claimant may not bring direct action against an insurance company on the contract because the insurer's duty flows to the insured." Reply at 2. Even assuming without deciding that this is a true statement of the law, Applicants may nonetheless have a stake in the outcome of HCC's lawsuit because they have filed the State Action against IGT. Should they obtain a money judgment against HCC (which, taking the complaint in intervention as true would be likely, as IGT is alleged to be in default in the State Action), Applicants would become judgment creditors, which may permit them to proceed against directly against HCC under the Policy.[2] Their interest in the Policy, thus supports their intervention in the instant action.

**3.     Impairment of Interest**

"Having found that appellants have a significant protectable interest, we have little difficulty concluding that the disposition of this case may, as a practical matter, affect it." *Calif. ex rel. Lockyer v. United States,* 450 F.3d 436, 442 (9th Cir. 2006). Nevertheless, the mere fact that a lawsuit would affect the proposed intervenors' interests is not enough if their interests would not be impaired if they have "other means" to protect them. *Id.*

---

[2] The court expresses no opinion as to theories under which Applicants may proceed directly against HCC.

ORDER GRANTING MOTION TO INTERVENE; DENYING MOTION FOR DEFAULT JUDGMENT —No. C-07-01188 RMW
CYY/MAG                                                        7

Although it is true that Applicants are not currently judgment creditors, it appears that they have attempted to preserve their option to recover under the Policy: they filed the State Action against defendants and made a demand on the insureds, providing proof of these demands to counsel for HCC. The outcome of the instant action, particularly a judgment by default entitling HCC to rescind the Policy, would materially impair Applicants' interest in recovering for their cancelled trip if they were not permitted to intervene in this matter because absent the Policy there may be no other means of recovering against defendants.

**4.     Representation of Interest**

The court considers three factors in determining the adequacy of representation: (1) whether the interest of a present party is such that it will undoubtedly make all of a proposed intervenor's arguments; (2) whether the present party is capable and willing to make such arguments; and (3) whether a proposed intervenor would offer any necessary elements to the proceeding that other parties would neglect. *Arakaki,* 324 F.3d at 1086 (9th Cir. 2003). The burden on proposed intervenors in showing adequate representation is minimal, and would be satisfied if they could demonstrate that representation of their interests "may be" inadequate. *Id.* (citing *Trbovich v. United Mine Workers of America,* 404 U.S. 528, 538 (1972)).

HCC asserts that the declaratory relief it seeks under the Policy is the same relief sought by Applicants, and it therefore adequately represents the Applicants' interests. HCC Opp'n at 6-7. This argument clearly lacks merit. Here, HCC would certainly not make Applicants' arguments that the Applicants' claims are covered under the Policy, because HCC seeks recession of the Policy and an injunction preventing IGT and Hansen from prosecuting any action based on that Policy. It is obvious that HCC's and Applicants' interests conflict and that HCC will not adequately represent the Applicants' interests in this matter.

For these reasons, the court concludes that the School District's motion for intervention should be granted pursuant to Rule 24(a)(2). Because the court finds that Applicants may intervene as of right, it does not consider the alternative argument that permissive intervention would be appropriate.

**B.     Motion for Default Judgment**

Rule 55(b)(2) permits the court, following a defendant's default, to enter a final judgment in a case. "The district court's decision whether to enter a default judgment is a discretionary one." *Aldabe v. Aldabe*, 616 F.2d 1089, 1092 (9th Cir. 1980). In exercising its discretion, the court may consider a number of factors including: "(1) the possibility of prejudice to the plaintiff, (2) the merits of plaintiff's substantive claim, (3) the sufficiency of the complaint, (4) the sum of money at stake in the action; (5) the possibility of a dispute concerning material facts; (6) whether the default was due to excusable neglect, and (7) the strong policy underlying the Federal Rules of Civil Procedure favoring decisions on the merits." *Eitel v. McCool*, 782 F.2d 1470, 1471-1472 (9th Cir. 1986)

As set forth above, HCC is prejudiced only to the extent that it will be required to prove up its allegations against defendants in order to obtain judgment. *TCI Group Life Ins. Plan v. Knoebber*, 244 F.3d 691, 701 (9th Cir. 2001) (to be prejudicial to plaintiff, the setting aside of a judgment must result in greater harm than simply delaying resolution of the case). HCC argues that there is no way for it to prosecute this action without some sort of response from the defendants, however, HCC may submit a motion for summary judgment (which will likely be unopposed by defendants unless they move to set aside the default against them). Additionally, the court has concerns about the merits of HCC's claim. In defaulting, defendants are deemed to have admitted all well-pleaded factual allegations contained in the complaint, *see* Fed. R. Civ. P. 55(a); *Benny v. Pipes*, 799 F.2d 489, 495 (9th Cir. 1986), nevertheless, the court needs to be convinced that the allegedly false representations by defendants on the insurance application would have been sufficiently material to warrant rescission of the Policy, particularly in light of the potential impact of that rescission on claimants against IGT and Hansen.

The court concludes that disposition of this case by motion supported by evidence and in which the School District may argument is preferable to default judgment. To the extent that denying the entry of default judgment results in prejudice to HCC, this prejudice is certainly outweighed by the court's interest in resolving matters on the merits rather than by default. The court thus denies HCC's motion for entry of default judgment.

ORDER GRANTING MOTION TO INTERVENE; DENYING MOTION FOR DEFAULT JUDGMENT —No. C-07-01188 RMW
CYY/MAG                                                                9

### III. ORDER

For the foregoing reasons, the court grants Applicants' motion to intervene and denies HCC's motion for default judgment. The parties shall appear for a case management conference on Friday, January 11, 2008 at 10:30 a.m.

DATED:     11/30/07

*Ronald M Whyte*
RONALD M. WHYTE
United States District Judge

**Notice of this document has been electronically sent to:**

**Counsel for Plaintiff:**

Louis Harrison Castoria       louis.castoria@wilsonelser.com
Sara J. Savage                sara.savage@wilsonelser.com

**Counsel for Defendants:**

No appearance

**Counsel for Intervenors:**

William Francis Abbott        billabbott@earthlink.net

Counsel are responsible for distributing copies of this document to co-counsel that have not registered for e-filing under the court's CM/ECF program.

**Dated:**  11/30/07                               /s/ MAG
                                          **Chambers of Judge Whyte**