**E-FILED on** 11/05/08

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| HOUSTON CASUALTY COMPANY,<br><br>　　　　Plaintiff,<br><br>v.<br><br>INTERNATIONAL GRAND TOURS, INC.; NORMAN RONNIE HANSEN a/k/a NORMAN RONNIE HANSEN, JR. a/k/a RON HANSEN; and DOES 1 to 10,<br><br>　　　　Defendants,<br><br>EDWARDSVILLE [Ill] COMMUNITY SCHOOL DISTRICT NO. 7, on Its Own Behalf and as Assignee for Katie Bachman, et al.,<br><br>　　　　Intervenors. | No. C-07-01188 RMW<br><br>ORDER GRANTING INTERVENORS' MOTION TO FILE AMENDED COMPLAINT; ORDER GRANTING MOTION TO QUASH SERVICE AND SET ASIDE DEFAULT<br><br>**[Re Docket Nos. 68, 103]** |

On May 2, 2008, plaintiff Houston Casualty Company ("HCC") moved for summary judgment seeking a declaratory judgment and rescission and reformation of an insurance policy held by defendant International Grand Tours ("IGT"). Edwardsville [Ill] Community School District No. 7 ("School District") intervened on behalf of thirty-three individuals claiming rights under that insurance policy, and now moves to amend its original complaint. After having default entered against him on August 3, 2007, defendants Norman Ronnie Hansen ("Hansen") and IGT

now seek to quash service of HCC's complaint and set aside the default entered against them. For the reasons stated below, the court grants School District's motion for leave to amend and defendants' motions to quash service and set aside the entry of default. Accordingly, consideration of plaintiff's motion for summary judgment will be postponed to permit defendants to respond.

## I. BACKGROUND

Defendant IGT was a travel agency specializing in educational tourism. Defendant Ronnie Hansen served as President of IGT. Decl. of Ron Hansen in Support of Mot. to Quash ("Hansen Decl.") ¶ 2. IGT started its business in 2004 and ceased operation in 2005. Compl. for Decl. Judgment by HCC ("HCC Compl.") ¶ 6. In 2004, defendant Hansen negotiated to purchase the assets of JM Travel Selections, Inc. ("JM Travel"), another educational travel company, owned by Joseph and Sharon Maloof ("Maloofs"). *Id.* ¶ 9. The Maloofs had been operating JM Travel since at least the late 1990s. Compl. for Decl. Relief by School District ("School District Compl.") ¶ 14. The result of the negotiation was an oral purchase agreement between the Maloofs and Hansen. As part of the agreement, the Maloofs were to sell their entire customer database and other intellectual property to IGT, and IGT would employ the Maloofs as its directors of operations and sales. *Id.* ¶ 10. The Maloofs started working for IGT, and their customers were notified of the transition. School District Compl. ¶ 20. Soon afterward, IGT began canceling pre-paid trips. *Id.* ¶ 11. It notified participants that they could receive a refund, which many took. *Id.* However, IGT failed to issue refunds as promised, so many customers filed suit against defendants, or made claims directly against HCC as IGT's insurer.[1] *Id.* ¶ 12.

IGT held a Professional Liability Errors & Omissions Insurance Policy, Policy No. H704-16117 ("Policy"), with limits of liability of $5,000,000 per claim. The Policy provides coverage for "any Claim first made against the insured" between October 19, 2004 and October 19, 2005, subject to a Retroactive Date of October 19, 2003 ("Policy Period"). *Id.* ¶¶ 25-26.

On February 28, 2007, HCC filed a complaint for declaratory relief on various grounds, seeking rescission of the Policy due to fraud, misrepresentation and concealment of material facts

---

[1] HCC's complaint notes that at least five suits have been filed against Hansen and IGT and that numerous claims against defendants have been submitted directly to HCC. HCC Compl. ¶¶ 15-24.

and an injunction preventing IGT and Hansen from pursuing any claim against HCC regarding the policy. *See id.* ¶¶ 52-58. On July 31 and August 28, 2007, HCC obtained a clerk's entry of default against all defendants. Mot. for Default Judgment, Exs. A-C. Since defendants never answered or otherwise responded to HCC's complaint, on October 9, 2007, HCC moved for default judgment pursuant to Fed. R. Civ. P. 54(c) for all the relief requested in HCC's complaint for declaratory judgment, including an award of costs. Mot. for Default Judgment at 5.

On September 25, 2007, before HCC moved for default judgment, the School District, having submitted a claim to HCC, moved to intervene, seeking declaratory relief against HCC. The School District alleges that a group of students and teachers from the School District ("Spanish Club") had a trip planned for late spring of 2005. Around March 2004, the Spanish Club sent JM Travel an initial deposit. *Id.* ¶¶ 19-20. In September 2004, the club received an undated letter from Joseph Maloof stating that he had decided to cease JM Travel's operation, and he wanted to introduce the Spanish Club to IGT. The Maloofs promised the Spanish Club that their contractual arrangements with JM Travel would continue with IGT, and that IGT would be a more efficient and better operation. *Id.* ¶ 21. Later, IGT sent a letter to the Spanish Club, stating that most of JM Travel's staff had joined IGT, and IGT made the same promises as the Maloofs had made. *Id.* ¶ 22. Thereafter, the Spanish Club members completed new applications and forwarded further payments to IGT as instructed. *Id.* ¶¶ 23-25.

Beginning in December 2004, the Spanish Club began having surcharge problems with IGT. *Id.* ¶ 29. On May 19, 2005, Hansen notified the Spanish Club that their trip was canceled, and informed the members that they could receive a refund. *Id.* ¶¶ 32-36. All members requested a refund, but IGT has not issued any refunds to members of Spanish Club. *Id.* ¶¶ 37-38.

On September 12, 2006, the School District filed an action in the Superior Court of Santa Clara County, Case No. 106-CV-070951, against IGT and Hansen, seeking recovery based on negligence, breach of statutory duty and negligent misrepresentation ("State Action"). *Id.* ¶ 40. Hansen defaulted in the State Action. *Id.* ¶ 45. Because Applicants believe that their losses are insured under the Policy, they moved to intervene as of right pursuant to Fed. R. Civ. P. 24(a)(2), seeking declaratory judgment that their recovery in the State Action are losses covered by the

ORDER GRANTING INTERVENORS' MOTION TO FILE AMENDED COMPLAINT; ORDER GRANTING MOTION TO QUASH
SERVICE AND SET ASIDE DEFAULT—No. C-07-01188 RMW
JAS                                          3

Policy. *Id.* at 10; Mot. for Intervention at 3. The court granted the School District's motion to intervene. On April 2, 2008, the School District obtained a default judgment in the State Action, and now seeks leave to amend their complaint to assert the direct action against HCC that they assert the default judgment affords them.

In the meantime, Hansen has resurfaced. Between January 2007 and January 2008, Hansen was living on a sailboat in the Mediterranean. Hansen Decl. ¶ 10. He returned after discovering that there was a warrant out for his arrest, and upon landing in San Francisco, was promptly arrested. *Id.* ¶ 17. After his release from jail in May 2008, he discovered the instant lawsuit against him.[2] *Id.* ¶ 18. Hansen now moves to quash service of the summons and complaint, set aside default, and modify the case schedule so he may have an opportunity to respond.

## II. ANALYSIS

### A. Intervenor's Motion to File Amended Complaint

As an initial matter the parties disagree as to the applicable legal standard. IGT argues that Federal Rule of Civil Procedure 15's permissive amendment rule applies to their motion, while HCC contends that because any amendment would require modification of the scheduling order, Rule 16(b)(4) applies, and "good cause" must be shown. HCC does not, however, articulate why the sought leave to amend necessitates a schedule change. In fact, the court's July 9, 2008 Order Continuing Briefing Schedule set out to allow briefing of the motion for leave to amend without modifying the summary judgment schedule. As the court pointed out in that order, "because HCC's motion for summary judgment is directed toward HCC's claims against defendants IGT and Hansen, any amendment to the complaint in intervention should not raise any additional issues to be addressed with regard to HCC's outstanding motion for summary judgment." Rule 15 therefore applies to IGT's motion for leave to amend.

---

[2] Hansen's declaration states that he discovered the summons and complaint in January of 2008. Butit also suggests that he did not see the summons until after his return to the United States in March of 2008. Reading the declaration chronologically, the January 2008 statement appears to be an error.

Federal Rule of Civil Procedure 15 governs the amendment of complaints.  It states that if a responsive pleading has already been filed, the party seeking amendment "may amend its pleading only with the opposing party's written consent or the court's leave." Fed. R. Civ. P. 15(a). Generally, leave shall be freely given "when justice so requires." *Id.*; *Eminence Capital, LLC v. Aspeon, Inc.,* 316 F.3d 1048, 1051 (9th Cir. 2003).  This rule reflects a strong underlying policy that favors determination of cases on their merits, and not on the technicalities of pleading rules. *See Foman v. Davis,* 371 U.S. 178, 181-82 (1962).  Accordingly, the court must be very liberal in granting leave to amend a complaint.  *Owens v. Kaiser Found. Health Plan, Inc.*, 244 F.3d 708, 712 (9th Cir. 2001) (quoting *Morongo Band of Mission Indians v. Rose,* 893 F.2d 1074, 1079 (9th Cir. 1990) (leave to amend granted with "extreme liberality").  Nevertheless, leave is not to be granted automatically.  *Zivkovic v. S. Cal. Edison Co.,* 302 F.3d 1080, 1087 (9th Cir. 2002). Whether to allow leave to amend is within the discretion of the district court. *Id.*  A district court may deny a party's request to amend a pleading where the amendment: (1) produces an undue delay in litigation; (2) is sought in bad faith or with dilatory motive; (3) unduly prejudices the adverse party; or (4) is futile. *AmerisourceBergen Corp. v. Dialysist West, Inc.,* 465 F.3d 946, 951 (9th Cir. 2006).

HCC opposes the amendment not because it satisfies any of the above criteria, but because prejudice should be presumed from School District's "unexplained" delay.  In deciding whether to grant leave to amend, a district court may consider the factor of undue delay, but delay alone cannot justify denying a motion to amend.  *Bowles v. Reade,* 198 F.3d 752, 757-58 (9th Cir. 1999). Furthermore, prejudice is the most important and common reason for denying leave to amend. *Eminence*, 316 F.3d at 1052.  To justify denial of leave to amend, the prejudice must be substantial.  *Morongo*, 893 F.2d at 1079. There has been some delay here, but only slightly prejudicial if at all.  School District filed a document on May 1, 2008 purporting to be, but not including, a motion for leave to amend.  School District then properly filed the instant motion on June 27, 2008.  The delay, although without justification, has not meaningfully prejudiced HCC. HCC does argue that School District's delay "jeopardizes Houston's ability to obtain a ruling on its summary judgment motion . . . ."  This concern does not justify refusing an amendment because

the School District is merely adding a new claim based upon its recent judgment against Hansen and IGT in California state court. The court therefore grants School District's motion for leave to amend.

**B.     Motion to Quash Service and Set Aside Default**

Plaintiffs claim that service was effective under Rule 4(e)(2)(B), which governs service of process on individuals in the United States.  The rule states that a person may be served by "leaving a copy . . . at the individual's dwelling or usual place of abode with someone of suitable age and discretion who resides there." Fed. R. Civ. P. 4(e)(2)(B).  Without proper service under Rule 4, the court lacks personal jurisdiction over the defendants, independent of any actual notice defendants might have received. *Jackson v. Hayakawa*, 682 F.2d 1344, 1347 (9th Cir. 1982).

Hansen claims that service was inadequate on two grounds: First, that 812 Palm Avenue was not Hansen's "dwelling or place of usual abode;" and second that Ding Yo Ling was not a person of "suitable age and discretion" to receive service.  Hansen further argues that service on IGT was inadequate because the requirements of Rule 4(h) were not satisfied.

**1. Service on Norman Ronnie Hansen**

**a.  Was 812 Palm Avenue Hansen's "dwelling or usual place of abode"?**

According to Hansen's declaration he did not reside at 812 Palm Avenue in May of 2007. From January 2007 through January 2008, he alleges, he lived on a sailboat, docked intermittently at various Mediterranean ports of call.  Kevan Kurt ("Kurt"), the process-server, issued a declaration stating that he "conducted online research and developed information that Mr. Hansen was receiving mail at 812 Palm Avenue" and that he concluded, based on observing Hansen's wife, children, and mother-in-law arriving at and leaving the property.  However, taking Hansen's statements as true, a factual question arises as to whether the service on Hansen was ineffective under Rule 4(e)(2) because 812 Palm Avenue was not, at the time, Hansen's "dwelling or usual place of abode."

**b. Was the summons and complaint left with a person "of suitable age and discretion"?**

ORDER GRANTING INTERVENORS' MOTION TO FILE AMENDED COMPLAINT; ORDER GRANTING MOTION TO QUASH SERVICE AND SET ASIDE DEFAULT—No. C-07-01188 RMW
JAS                                                                 6

Kurt's declaration also states that he left the summons and complaint with Ding Yo Ling, Hansen's mother-in-law, and gave her directions, translated by Hansen's minor children, which he interpreted her to have understood.  Here, plaintiffs argue not that any of the children or Ms. Ling individually were of sufficient age and discretion to receive service, but rather that, together, the children and Ms. Ling were competent to receive service.  This is implausible.  While fluency in English is not necessary to receive service, *see Boston Safe Deposit and Trust Co. v. Morse*, 779 F.Supp. 347, 350 (S.D.N.Y. 1991), relying on children to translate is insufficient, particularly when the person receiving service may not understand the nature and importance of the delivered documents. Ms. Ling is therefore not of suitable age and discretion to receive service.

**2. Service on International Grand Tours**

Service on a corporation is governed by Rule 4(h).  HCC does not claim to have served IGT in accordance with Rule 4(h)(1)(B), which requires service on a person authorized to receive service on behalf of a corporation.  Therefore, service on IGT must have been under Rule 4(h)(1)(A).  California law requires that service on a corporation be delivered to a designated agent or officer of the corporation.  50A Cal. Jur. 3d Process, Notices, and Subpoenas § 46 (citing Cal.C.C.P. § 416.10).  Ms. Ling is neither a designated agent or officer.  HCC's service on IGT was therefore ineffective.

**3. Motion to Set Aside Entry of Default**

Federal Rule of Civil Procedure 55(c) permits a court to set aside an entry of default for good cause.  As the Ninth Circuit wrote in *Mendoza v. Wight Vineyard Management*, 783 F.2d 941, (9th Cir. 1986): "The court's discretion is especially broad where, as here, it is entry of default that is being set aside, rather than a default judgment. *See Meehan v. Snow*, 652 F.2d 274, 276 (2d Cir.1981). A decision on a motion to set aside a default is not an abuse of discretion unless the court is "clearly wrong" in its determination of good cause. *Provident Security Life Insurance Co. v. Gorsuch*, 323 F.2d 839, 842 (9th Cir.1963)."

Hansen has states in a supplemental declaration that he did not know about the instant lawsuit until he discovered the summons and complaint in May of 2008.  HCC states in its motion that "Houston's counsel spoke with Mr. Hansen over 4-5 months ago regarding the default and

spoke about Houson's summary judgment motion." However, the statement is not supported by a declaration. In any event, doubts should be resolved in favor of setting aside a default so the case may be resolved on the merits. *Lichtenstein v. Jewelart, Inc.*, 95 F.R.D. 511 (E.D.N.Y. 1982). Further, here the service was defective so the entered default was void.

### III.  ORDER

For the foregoing reasons, the court grants intervenor's motion for leave to amend and grants defendant's motions to quash service and set aside the entry of default. HCC shall respond to the amended complaint in intervention by within 20 days and defendants Hansen and IGT shall respond to the complaint within 20 days. The hearing on the motion for summary judgment is taken off calendar without prejudice to its being re-noticed.

DATED:   10/22/08

*Ronald M. Whyte*
RONALD M. WHYTE
United States District Judge

**Notice of this document has been electronically sent to:**

**Counsel for Plaintiff:**

Louis Harrison Castoria    louis.castoria@wilsonelser.com
Sara J. Savage    sara.savage@wilsonelser.com

**Counsel for Defendants:**

Alan Louis Martini    amartini@smtlaw.com

**Counsel for Intervenors:**

William Francis Abbott    billabbott@earthlink.net
Eric F. Hartman    jhart75442@aol.com

Counsel are responsible for distributing copies of this document to co-counsel that have not registered for e-filing under the court's CM/ECF program.

**Dated:**   11/05/08          JAS
                                              **Chambers of Judge Whyte**

**United States District Court**
For the Northern District of California

ORDER GRANTING INTERVENORS' MOTION TO FILE AMENDED COMPLAINT; ORDER GRANTING MOTION TO QUASH SERVICE AND SET ASIDE DEFAULT—No. C-07-01188 RMW
JAS    9